UNITED STATES v. TAFFE.

(Circuit Court, D. Oregon. April 29, 1898.)

No. 2309.

CONDEMNATION—REMOTE AND SPECULATIVE DAMAGES.

In a proceeding to condemn a right of way for a boat railway over defendant's land, the injuries likely to result to his fishing grounds are too conjectural to be the basis of an award; and the possibility of its construction being followed by a change in the track of a railroad company, so as to injure defendant's shipping facilities, is too remote to be considered as a consequence of the proposed use of the land.

John H. Hall, for the United States.
Dolph, Mallory & Simon and Nixon & Dolph, for defendant.

BELLINGER, District Judge. This is a proceeding to condemn a right of way for a boat railway over defendant's lands. There have been two trials, resulting in verdicts which were set aside as excessive. 78 Fed. 524, 86 Fed. 113. The matter is now submitted, upon a stipulation of the parties, to the judge of this court, the parties stipulating to abide by his decision "as a sole arbiter and judicial tribunal" in the premises. The land condemned is of nominal value, unless its use as a right of way is to be considered. Aside from this, the claim for compensation is based upon injuries that will result to defendant's fishing rights and interests, by the work of constructing the boat railway, by changes in the high water channel of the river caused by an embankment for the roadbed, by interference with the prospective working of a gold mine on the premises, and by the proposed change in the railway track of the Oregon Railway & Navigation Company at that point.

There is no testimony legitimately tending to show a prospective demand for further rights of way, and I am of the opinion that the defendant is not entitled to anything on such account. As to the injuries likely to result from the work of building the boat railway, and from the effect of the proposed embankment upon the run of fish to defendant's fish wheels, these are purely conjectural. It cannot be known that the work of construction at that point will be carried on during the fishing season, and, if so, for what length of time, nor the effect of such work if prosecuted during the fishing season, nor the effect of the proposed roadbed upon the run of fish going to defendant's fish wheels. Nothing could be more uncertain or speculative than the damages that may result from these causes. Such damages are to be classed as possible or imaginary damages, for which no award can be made.

In the last trial the claim to compensation on account of defendant's gold mine was given small consideration by defendant, and was, in effect, abandoned by him in his testimony; nor is there anything in the case to warrant an award of damages on that account. He testified that the prospecting done by him resulted in obtaining several colors; "but it was very light colors,—very small. You would have to take a double magnifying glass to detect it." "Q. It was not enough to justify you to go to any expense for the

purpose of placer mining it? A. No; nor I have never had time since, nor I would not go to any expense either until I found out that there was more gold in it than I have ever discovered; but I have never tried since."

The proposed change in the track of the Oregon Railway & Navigation Company, if made, will cause great inconvenience and damage to defendant in the loss of existing facilities for the shipment of his product, unless the company operates a spur track at that point for defendant's accommodation; and the question arises whether such damage is to be assessed as a result of the proposed condemnation. Whether or not there will be a change in the railroad at this point depends upon the voluntary action of the company. The government does not assume to have authority to make such change. It appears that the proposed change would straighten the road at that point, and would be to the interest of the company, and in keeping with a policy of improvement adopted by it; and it is upon such an inducement that the company is expected to permit its line to be changed. If, upon such an inducement, the company should change its line, or permit a change to be made, this could not be held to be a consequence of the use which is to be made of the land sought to be condemned in this proceeding. Damages to be recovered must be such "consequential damages, direct in their nature, as will naturally arise from the use to which the property condemned is to be put." A change in the railroad does not follow as a consequence of the proposed use of the land condemned; and, furthermore, the withdrawal of the railroad shipping facilities now enjoyed by defendant does not follow as a consequence of a change of the railroad, if made. The proposed boat railway will leave the present railroad track intact for use as a switch or spur, connecting defendant's cannery with the main railway track as changed. If defendant has a vested right to these facilities, as argued on the trial, the railroad company will not be prevented, by the construction and operation of the boat railway, from continuing them. If he has such right, he will not be damaged by what is proposed, unless the railroad company fails in its obligation to him, in which case he has his remedy by an action at law. On the other hand, if he is without such vested right, his damages are, in my opinion, within the category of those damages for which there is no redress,—damnum absque injuria; and in any event, as already shown, they are not a consequence, direct in their nature or otherwise, of the use for which the proposed condemnation is intended.

Upon these conclusions, the defendant is not entitled to compensation in respect to any of the matters referred to. In my judgment, the damages to defendant consequent upon the taking and use to be made of the land in question will not exceed $1,000; and I find in his favor for that sum.